Thomas **GORDON** and Alex King, Plaintiffs,

v.

**GENERAL MOTORS CORP.,** Defendant.

No. 85–586C(6).

United States District Court, E.D. Missouri, E.D.

July 31, 1986.

---

1. Noll requested and received assistance to take Quaschnick to the county jail because he was driving a canine unit.

Mildred Motley, Bussey & Jordan, St. Louis, Mo., for plaintiffs.

James E. McDaniel, Lashly, Baer & Hamel, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

GUNN, District Judge.

Plaintiffs Thomas Gordon and Alex King brought this action pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, alleging that their employer, defendant General Motors Corporation, discriminated against them on the basis of their race. The jurisdiction of this Court is founded on those statutes and on 28 U.S.C. § 1331. Plaintiffs' § 1981 count was tried to a jury, which returned a verdict in favor of defendant.

The Title VII count was tried to the Court. After considering the pleadings, the evidence presented at trial and the applicable law, the Court finds that plaintiffs have failed to prove that defendant discriminated against them. The Court enters the following findings of fact and conclusions of law in accordance with Rule 52, Fed.R. Civ.P., and renders judgment for defendant.

### Findings of Fact

Defendant General Motors Corporation (GMC) is a corporation doing business in the State of Missouri and is an "employer" within the meaning of Title VII.

Plaintiffs Thomas Gordon and Alex King are black. Prior to January 1, 1980, each was employed on a month-to-month basis as a production supervisor at defendant's St. Louis plant. Neither plaintiff had an employment contract with GMC. As production supervisors plaintiffs were not subject to a collective bargaining agreement.

Plaintiffs' complaint of race discrimination arises from their lay off in January 1980, along with large numbers of other employees at the GMC St. Louis plant. Plaintiffs do not contest that the lay offs were mandated by economic conditions; however, in their complaint plaintiffs allege that they were entitled to be laid off in line with their length of service and that defendant's failure to follow a seniority schedule in lay off constituted impermissible race discrimination.

The Court finds that plaintiffs were not so entitled. The credible testimony of Edward Fails, Salaried Personnel Administrator for GMC St. Louis, was that plaintiffs were never advised that they were entitled to be laid off, rehired, or transferred based on their length of service. Mr. Fails testified that length of service constituted one of several factors taken into account by defendant GMC in making personnel decisions. At the time of plaintiffs' lay off, for example, certain production supervisors who had worked less time than plaintiffs were retained for a brief period, but Mr. Fails testified that the decision to retain them was based upon their capacity to train supervisors working on the Corvette line at the St. Louis plant.

In evaluating the evidence on this point, the Court has also considered deposition testimony of both plaintiffs that they had no complaint about their manner of lay off. The Court therefore finds that plaintiffs were not entitled to be laid off on the basis of seniority.

Plaintiffs also allege that they were entitled to be transferred after lay off to other GMC plants in accordance with their length of service. Plaintiffs identified several white employees with less seniority who received transfers while plaintiffs continued in lay off status and argued that defendant's failure to provide transfers to plaintiffs constituted impermissible race discrimination.

James Prendergast, Salaried Personnel Administrator for the GMC plant in Wentzville, MO, and John Muhlbach, who holds the same position at the GMC plant in Bowling Green, KY, both testified that individual GMC plants make independent hiring decisions and that length of service as a production supervisor at another plant was not a determinative factor in their hiring decisions. Mr. Prendergast testified to a series of objective criteria applied at the Wentzville plant to determine which candidate was best qualified for an opening. Length of service was but one criterion.

The Court finds, upon review of this credible testimony, that plaintiffs were not entitled upon lay off from the GMC St. Louis plant to be transferred to other GMC plants in accordance with their seniority.

In April 1983, plaintiffs were rehired by GMC St. Louis as security officers. As the final basis for their action, plaintiffs allege that they were entitled to be recalled into their positions as security officers at the St. Louis plant in accordance with their length of service. Plaintiffs presented evidence that several GMC employees with less service time were taken on as security officers at the St. Louis plant while plaintiffs remained on lay off.

David Hickey, Salaried Personnel Administrator at the St. Louis plant, testified that while plaintiffs were on lay off, GMC St. Louis hired certain new employees as well as former part-time security officers as full time security officers. Mr. Hickey testified that GMC St. Louis required of applicants for security positions either prior experience in security, fire protection or military police or 160 hours in a special training program. Mr. Hickey testified that the persons hired to fill these positions at the St. Louis plant while plaintiffs remained on lay off either had this prior experience or were eager to undergo the special training because they desired to make security service their career. The Court therefore finds that plaintiffs were not entitled to be rehired as security personnel in accordance with their length of service and that de-fendant GMC had objective, racially neutral reasons for rehiring officers with shorter length of service prior to rehiring plaintiffs.

In July 1983 defendant GMC offered plaintiff King the opportunity to return to his position as production supervisor at the St. Louis plant, but plaintiff King rejected the offer on the basis of health. At the time of trial both plaintiffs had been reinstated in their former positions as production supervisors.

### Conclusions of Law

The burdens and order of proof in a Title VII case are succintly set forth in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for [his action]...." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Id.* at 252–53, 101 S.Ct. at 1093.

Upon consideration of the facts as set forth above, the Court concludes that plaintiffs have failed to carry their ultimate burden of proving that defendant GMC had a racially discriminatory motive that underlay the personnel decisions it made regarding plaintiffs. The underlying premise of plaintiffs' complaint—that they were entitled to employment protections and opportunities as a result of their seniority with defendant GMC—was refuted by the testimony of Misters Fails, Prendergast, Muhl-

bach and Hickey, each of whom testified that length of service was a single factor among many considered by administrators in making personnel decisions. Furthermore, any inference offered by plaintiffs that racial considerations interfered with their treatment in accordance with their length of service was adequately rebutted by the testimony of GMC's Salaried Personnel Administrators, who credibly testified to objective, racially neutral grounds for the decisions made with respect to plaintiffs' employment.

The evidence at trial amply showed that those production supervisors with less seniority than plaintiffs who were kept on at the GMC St. Louis plant after January 1980 were retained because they had the capacity to train supervisors on the Corvette line. Race was not a factor in this decision. The evidence further showed that transfer hiring decisions were made independently by individual GMC plants according to a series of legitimate, non-discriminatory criteria. Race played no part in those decisions. The evidence finally showed that the individuals rehired to security positions before plaintiffs had either superior qualifications or a desire to remain in security services. Each of these considerations is racially neutral. There was no evidence to suggest that the reasons for personnel decisions proffered by defendants were pretextual. Plaintiffs have wholly failed to prove that race played any part in those decisions.

Judgment for defendant.